UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
ANTHONY MINOR,

       Plaintiff,


    -V-


The City of New York; New York
City Detective Anderson Walcott;
New York City Detective Nieves;
New York County Assistant District
Attorney Virgina NGuyen,

       Defendant.

-------------------------------------X

Plaintiff <u>pro</u> <u>se</u> states as follows:

# 16CV8812

JURY TRIAL DEMANDED

VERIFIED COMPLAINT

42 U.S.C. § 1983

16 Civ._____(   )(   )


## PRELIMINARY STATEMENT

1. This is a civil rights action arising out of the false
arrest and the malicious prosecution of Plaintiff.  Plaintiff
hereby asserts 42 U.S.C § 1983; 42 U.S.C. § 1985 Conspiracy
claims; 42 U.S.C. § 1985 Discrimination claims; 42 U.S.C. § 1983
False Imprisonment claims; Malicious Prosecution; State Law claims,
and <u>Monell</u> claims against the City of New York; based on the wide-
spead, pattern of false arrest <u>inter</u> <u>alia</u>, within the City of New
York. The aforementioned caused Plaintiff to be wrongfully con-
fined to the New York City Department of Corrections for an extend-
ed period of time, without "Probable Cause."

## JURISDICTION & VENUE

2. This Court has federal question, and subject matter jurisdiction, over this action Pursuant to 28 U.S.C. §§ 1331, and 1343 over claims arising from: The Civil Rights Act of 1871; 42 U.S.C. § 1983; 42 U.S.C. § 1981; 42 U.S.C. § 1985; and the fourth, fourteenth, and fifth Amendments to the U.S. Constitution.

3. Pursuant to 28 U.S.C. § 1391 (b)(2), the venue is proper in the Southern District of New York, the judicial district in which act(s), event(s), or omissions giving rise to the claims occurred. This Court also has Pendent jurisdiction over Plaintiff's New York State Law claims.

## JOINT LIABILITY

4. This actions falls within one or more exceptions set forth in CPLR § 1602.

## PARTIES TO THE ACTION

5. Plaintiff ANTHONY MINOR, was at all times relevant a resident of the State of New York, New York County.

6. Defendant The City of New York, was at all times relevant, a municipal corporate subdivision of the State of New York, responsible for the Policies, Customs, Patterns, and Practices of the New York City Police Department, and their subordinates thereof.

7. Defendant New York City Detective  ANDERSON WALCOTT, was at all times relevant a New York City, Police Detective, assigned to the Manhattan Robbery Squad ("MRS"), acting under color of law; arresting officer.

8. Defendant New York City Police Detective Nieves, was at all times relevant a New York City, Police Detective, assigned to the MRS; acting under color of law; arresting officer.

9. New York County ADA VIRGINA NGUYEN, was at all times relevant an Assistant District Attorney, assigned to the Manhattan District Attorney's Office, assigned to prosecute Plaintiff [without probable cause].

10. All defendant(s) are sued herein in their individual and official capacities.

## STATEMENT OF FACTS

11. In March 27, 2014, Plaintiff was at liberty as a Parolee. On the date in question Plaintiff reported to his field Parole Officers office for his bi-weekly, in person interview. At the conclusion of the aforesaid interview, Plaintiff's Parole Officer ("PO") informed him that members of the MRS were in route to pick him up for a line-up. At approximately 9:00 am defendants Walcott, and Nieves arrived at Plaintiff's Po's office; placed him in

custody, and transported him to MRS headquarters for a series of line-ups.

12. Subsequent line-ups, revealed that Plaintiff was not the culprit of any crimes or otherwise identified as a suspect by the victims and/or witnesses. It should be noted, that the foregoing line-ups were completed efficiently, and lasted approximately one hour. Despite these facts, Plaintiff remained in MRS custody for over 13-hours without Probable Cause, or consent of Plaintiff. At approximately 10:00 pm Plaintiff was not charged and released.

13. On or around April 3, 2014, Plaintiff was within the vicinity of 126th St. & Lenox Ave., when two men approached him and stated "Do you have a weapon on you?" Plaintiff exclaimed No! Why? What is this about? The men then grabbed Plaintiff and forcibly placed him in mechanical restraints. These men, bore no Police insignia. Sometime thereafter, the men withdrew-- Police Shields and identified themselves as Police officers. They alleged that Plaintiff had an active I-card pending with MRS,[1] despite the fact, that the aforementioned line-up vindicated Plaintiff on March 27, 2014.

---

1. Plaintiff was interviewed by members of MRS [defendants Walcott; and Nieves] on March 27, 2014, and cleared of any potential charges at that juncture, therefore, eliminating the I-Card [line-up/ interrogation], pending. An I-Card is similar to a warrant except that such want is not authorized by a Judge. Technically, an I-Card is essentially a request for an interview, however, NYCPD, utilizes I-Cards as quasi warrants; circumventing the Fourth Amendments' Probable Causes, Warrant prerequisite.

14. Notwithstanding this, Plaintiff was illegally frisked, and found to be in possession of a clipped marijuana cigar. The officers, then informed Plaintiff, that he was being charged with Unlawful Possession of Marijuana in the 5th degree.

15. Consequently, Plaintiff was transported to the 32nd Precinct, by Police officer Merino. Upon arriving, said officer placed Plaintiff on the Sergeants desk for another frisk [at the direction of the desk Sgt.], whereas Officer Merino shoved his hand into Plaintiff's anal cavity and withdrew a bag of crack cocaine [47-dime bags] approximately 4½ grams of cocaine. Plaintiff was subsequently charged with the aforesaid controlled substances.

16. The following morning Plaintiff was arraigned on the charges and issued a $ 20,000.00 bail, and confined to Manhattan Detention Center ("MDC").

17. In or around April 5, 2014, Ms. Rashida Nurse, Posted Plaintiff's bail, by responding to a bail bondsman's office. Ms. Rashida Nurse, then reported to the New York District Attorney's Office, to speak with defendant ADA NGUYEN, regarding a 72-Hour insurity hearing. Defendant ADA NGUYEN, overtly demonstrated her displeasure, with the fact that someone was posting Plaintiff's bail. ADA NYGUYEN, improperly/unjustifiably objected to the proceeds, presented by Ms. Rashida Nurse, on the grounds that the proceeds presented were the result of

illegal firearm sales in the community.[2] ADA NGUYEN's statements to the Court were deliberate, cursory misrepresentations, that resulted in denial of Plaintiff's bail without legal basis, at that juncture. Nevertheless, Plaintiff's Attorney was in the mist of securing another bail hearing when defendants Det. Walcott, and Det. Nieves, re-arrested Plaintiff and charged him with a constellation of unrelated charges.

18. Defendants Det. Walcott, and Det. Nieves, charged Plaintiff was six counts of Burglary in the first degree; six counts of Robbery in the first degree, and four counts of Robbery in second degree.

19. Plaintiff's was subsequently arraigned, and his bail was raised to $ 120,000.00.

20. During Plaintiff's re-arrest defendant Det. Walcott, stated to Plaintiff "Niggers like you don't deserve to live." defendant Nieves then took that opportunity to state "it's time

---

2. Ms Rashida Nurse, presented her bank statements, Pay Stubs inter alia to ADA NGUYEN, unequivocally demonstrating where the bail proceeds derived from. In spite of these documents ADA NGUYEN fabricated claims to the Court that Ms. Rashida Nurse's bail funds came from illegal firearm sales. These statements were made with the intentions of causing Plaintiff to be denied bail although Ms. Rashida Nurse, posted the aforementioned bail.

to Put the monkey in the cage! it does not matter if you actually committed the crimes; with your record, the jury is going to convict you. Me and Virgina [NGUYEN], have been after you for sometime. When we last spoke she was concerned about you making bail, but as you can see that an't happening homeboy aaiight!" Det. Walcott, then chimed in now you can visit your nigger friends in the mountain free of charge. You didn't think you got away with punching Kevin did you? Plaintiff exclaimed who's Kevin? Det. Walcott, stated " Kevin Catalina my Excommanding officer at the 32 Precinct, you punched him in the eye 2009, now its our turn; hopefully you never get out."

21. Plaintiff was charged with committing the aforesaid Robberies and Burglaries, despite the victims of the crimes noting on record that the culprits of these crimes were "Very dark skin, and youthful, fresh out of their teenage years."

22. ADA NGuyen, overtly admitted to Plaintiff's trial counsel that her case(s) against Plaintiff were weak but she wanted to try him because of his criminal history.

23. Through out the pendency of Plaintiff's case his plea bargain offer was 20 years together with five years Post Release.

24. ADA NGuyen, maliciously prosecuted Plaintiff even though the victims of said crimes identified other person(s) as culprits.

25. In fact, ADA NGUYEN, maliciously continued the prosecution of Plaintiff wantonly, despite having material and scientific evidence, that indicated, that Plaintiff did not commit the aforementioned crimes.

26. Shockingly, during Plaintiff's trial, ADA NGUYEN, attempted various times to sabotage Plaintiff's trial by way of cleverly attempting to introduce exhibits from un-related crimes that the Court precluded from entering the trial. She did so by combining the precluded exhibits with allowable exhibits [over 1000 pages] and attempting to pass such to her expert witness on the stand [but counsel realized her intentions]. Moreover, she attempted to introduce a theory of a Robbery/Burglary occurring in New York, despite the Court ruling that such a theory was precluded from entering the trial.

27. The evidence ADA NGUYEN, used to prosecute Plaintiff did not meet the probable cause prerequisite. The following items were introduced: (1) a plastic garbage bag with over 800 finger and/or palm prints [nevertheless Plaintiff was the only person charged]; (2) a wig found at another crime scene, that Plaintiff was not a suspect nor charged. At Plaintiff's trial experts testified that although the wig had Plaintiff's DNA on it, it did not match the hair found at the crime scene, because the wig was animal hair and the hair found at the scene was human. ; (3) a witness who alleged that Plaintiff sold him a stolen Metro-Card [witness was subsequently impeached for lying].

28. Not surprisingly, defendant ADA NGUYEN, used the witness cited _supra_ to testify against Plaintiff, in exchange for dismissal of the Possession Stolen Property charge [Possession of the stolen Metro-Card]. Through this agreement with ADA NGUYEN, the witness obviously avoided deportation as he is an illegal alien.

The aforementioned conduct undoubtedly constitutes a _Russo_ violation. Here defendant's were in possession of exculpatory evidence that would of established Plaintiff's innocence. However, defendant's collectively failed to unreasonably investigate or establish the vindicative evidence, in violation of Plaintiff's "right...to be secure in [his] person []... against unreasonable searches and seizures." U.S. Const. amend. iv. e.g. defendant's jointly were consciously aware that Plaintiff was never identified as being a culprit to a crime; DNA testing vindicated Plaintiff; Witness identification(s), identified other individuals as the culprits [with firmness others with uncertainty]; Plaintiff's arrest was purely racial discrimination, and pure retaliation, for previous crimes, together with a conspiracy to violate Plaintiff's rights or deprive Plaintiff of his civil rights.

29. In spite of these facts ADA NGUYEN, continued Plaintiff's prosecution. Moreover, during one the line-ups [Plaintiff participated in] a victim identified another individual as the culprit of the Robbery. When asked how does he know the victim stated "because that's the mother fucker who robbed me!"

30. During Plaintiff's trial, the Court dismissed the jury into their deliberation room, multiple times; due to ADA NGUYEN's violations of the Court's orders e.g. attempting to admit certain documents into the trial by mixing them with allowable documents, and giving the documentation to her expert to read.

31. As a result of the foregoing Plaintiff remained confined for approximately 22-month's, in the custody of the New York City Department of Corrections.

32. On January 28, 2016 Plaintiff was found not guilty of all charges by a jury of his peers.

33. Since 2010 through, the present date, defendant the City of New York, has falsely arrested, and Maliciously prosecuted over 100 citizens or resident of the State New York, without probable cause, and/or continued prosecution after, becoming aware that the accused was innocent.

34. Defendant City of New York, has a wide spread pattern of false arrest within its jurisdiction, due to inadequate training; failure to train and supervise its Police Officers; subordinates, agents, prosecutors, and agents *inter alia*.

35. Defendant's  Det. Walcott and Det. Nieves both have Federal  lawsuits  pending  and/or  settled  for  False  Arrest, Excessive Force, Conspiracy, *inter alia*.

36. Defendant's Det. Walcott, and Det. Nieves, falsely conveyed to the District Attorney's office that Plaintiff committed the aforementioned crimes despite having physical and circumstantial evidence to vindicate Plaintiff.

37. Defendant's collectively, and knowingly continued the prosecution of Plaintiff even though Plaintiff was cleared via DNA testing; no witnesses identified Plaintiff, and further no one implicated Plaintiff as a culprit.

38. As a direct and proximate result of defendant's actions Plaintiff was damaged and suffered the following injuries:

---

3.  Defendant Det. Walcott, had the following federal lawsuits filed against him while under color of law: Johnson V. City of of New York; Alvarado V. the City of New york; Thompson V. The City of New York [S.D.N.Y.] *inter alia*. Nieves had the following federal lawsuits: Rivera V. City of New York; *inter alia*.

- Assaulted by 20 gang members at Rikers Island;
- Confined to solitary confinement;
- Loss of Privacy;
- Intentional infliction of emotional distress;
- Loss of employment opportunities;
- Humiliation;
- Degradation;
- Loss of Liberty;
- Loss of personal property;

39. The prior civil rights actions filed against defendant's Det. Walcott, and Det. Nieves should have put defendant City of New York on notice of their serious misconduct and propensity to commit civil rights violations, including false arrest, use of excessive force, inter alia. Moreover, an impartial investigation by the New York City Police Department internal affairs Bureau should have revealed that said defendant's were unfit to serve as law enforcement officers.

40. As a direct and proximate cause of defendant's actions Plaintiff was damaged and seeks redress.

## FIRST CAUSE OF ACTION

(Against defendants Det. Walcott, Det. Nieves, and Def-
endant ADA NGuyen

FOR § 1983 Conspiracy)

41. Plaintiff hereby incorporates and references all of the
foregoing paragraphs and further alleges as follows:

42. The heretofore alleged actions of defendants Det. Walcott,
Det. Nieves, and ADA NGuyen demonstrate that they enetered into
a conspiracy to deprive Anthony Minor of his rights secured by
the Fourth, Fourteenth Amendments to the United States Const-
ution in violation of § 1983.

43. Said defendants Det. Walcott, Det. Nieves, and NGuyen
engaged in actions in furtherance of the aims of said conspiracy,
including but not limited to, arresting Plaintiff without
probable cause in retaliation for Plaintiff assaulting a member
of the New York City Police Department's 32 Preccinct [Command-
ing Officer Kevin Catalina. Defendant's also discriminated
against Plaintiff due to his nation of origin.

44. As a result of the conspiracy and actions aforementioned
Plaintiff experienced severe emotional distress, loss of liberty,
Loss, of personal property; humiliation, degradation, loss of

employment opportunities.

45. As a result of the aforesaid illegal confinement of Plain-
tiff, he was ordered confined to the New York City Department
of Corrections; a subdivision and/or arm of defendant City of
New York. During Plaintiff's confinement at "Rikers Island" he
was assaulted by approximately 20 gang bangers: to wit caused
Plaintiff several physical injuries inter alia. Moreover, Plain-
tiff was transferred to Protective custody during his confinement.

46. As a result of being housed in Protective Custody,
Plaintiff was subjected to extreme confinement. Plaintiff was
confined to his cell approximately 20 hours a day ; because of
his Protective custody status.

47. Plaintiff was denied privileges afforded to inmates in
general population i.e. preparation of commissary meals; group
recreation periods; movement through out the facility; group
meals; group family visits; Law library privileges.

48. Plaintiff was also exposed to unconstitutional Prison
Conditions; uncontrolled inmate on inmate violence; inmate riots;
hostile inmates with scalpel blades; corrupt Prison guards, and
other conditions as identified in the U.S. Department of Justice
("DOJ") for the Southern District of New York, Report.

49. Plaintiff request that the honorable Court take judicial
notice of the DOJ investigation of Rikers Island.

50. As a direct and proximate cause of defendants' actions Plaintiff was damaged.

51. The aforesaid actions of said defendants' Det. Walcott, Det. Nieves, and ADA Nguyen deprived Plaintiff Anthony Minor, his rights, privileges and immunities secured by the First, Fourth, Eighth, and Fourteenth Amendments of the United States Constitution, in violation of 42 U.S.C. § 1983.

52. Said defendants' engaged in actions in furtherance of aims of said conspiracy, by providing false testimony to the Supreme Court, and to a jury of Plaintiff's peers.

53. The concealment conspiracy was conducted by the submission of false Police reports concerning Probable Cause to arrest Plaintiff; and information that vindicated Plaintiff of the accused crimes.

54. The arrest and Prosecution of Plaintiff was triggered by Plaintiff's nation of origin; past crime; and his past criminal history.

## SECOND CAUSE OF ACTION

(Against defendants' Det. Walcott, Det Nieves, and

ADA NGuyen

FOR § 1983 FALSE ARREST & MALICIOUS PROSECUTION

FALSE IMPRISONMENT)

55. Plaintiff hereby incorporates and references all of the foregoing paragraphs and further alleges as follows:


56. The arrest and prosecution against Plaintiff, occurred without Probable cause, and was the result of retaliation.


57. Moreover, the aforementioned arrest was the result of racial discrimination that targets African American minorities, and individual with past criminal histories.


58. Plaintiff alleges that the arrest and prosecution against him was against his will; he was conscious of it; it was not privileged; and Plaintiff was acquitted of all charges; and confined against his wishes.


59. Plaintiff alleges that he was maliciously prosecuted

although defendants' were consciously aware that Plaintiff, did

not commit the crimes in question; through material evidence,

scientific testing, witness testimony, photo array's, line-ups.


60. Plaintiff states that defendants' conduct was wantonly,

deliberately, and retaliation together with racial discrimination

against African Americans of the City of New York. All defendants'

engaged in the aforementioned conduct while acting under color

of law.


### THIRD CAUSE OF ACTION

(Against defendant's Det. Walcott, Det. Nieves, and ADA

NGuyen

### FOR § 1983 RETALIATION)


61. Plaintiff hereby incorporates and references all of the

foregoing paragraphs and further alleges as follows:


62. Plaintiff states, that defendant's hereby engaged in the

aforementioned false arrest, malicious prosecution, and discrim-

ination against Plaintiff, in retaliation for an incident that

occurred several years prior to wit: Plaintiff punched Kevin

Catalina, Ex 32 Precinct commanding officer, in the face. In

addition, defendant's separately, engaged in said conduct as

part of their conspiracy to violate the rights of African American,

New York City residents who have several felony convictions.

63. As a result Plaintiff was Plaintiff falsely arrested, maliciously prosecuted, and exposed to unconstitutional living conditions at Rikers Island. It should be noted that defendant City of New York, was fully aware of the unconstitutional living conditions, hazards, inmate violence, and corrupt guards of Rikers Island, through reports, notice from the DOJ, and other civil rights lawsuits filed for similar conduct, definitely alerted the City of New York to the dangers that Plaintiff faced.

64. As a result of the foregoing Plaintiff was damaged and seeks redress.

## FOURTH CAUSE OF ACTION

### (Against The City of New York
### FOR § 1983 MONELL CLAIMS)

65. Plaintiff hereby incorporates and references all of the foregoing paragraphs and further alleges as follows:

66. The retaliation, false arrest, malicious prosecution inter alia were the result of defendant City of New Yorks' failure to properly train and supervise its employees.

67. The constitutional injuries inter alia sustained by Plaintiff were the result of a policy, practice, custom, and/or usage

of defendant City of New York, in failing to adequately maintain
an updated and organized Police manual that provides its Police
Officers with standards and expectations consistent with relevant
legal standards and contemporary Police practices, thereby
constituting deliberate indifference to the rights of members of
the Public, including Plaintiff.

68. The injuries sustained by Plaintiff were the result of a
policy, practice, custom, and or usage of defendant City of New
York of hiring and/or retaining officers without properly screen-
ing such employees as to racial animus and propensity for false
arrest, racial discrimination or failing to adhere to such
policies as they have regarding the issues.

69. This injuries Plaintiff sustained were the result of a
policy, practice custom and/or usage of defendant City of New
York of failing to investigate, discipline or retain police
officers who engaged in prior acts of False arrest, excessive
force, and racially motivated conduct or behaviors.

70. As a result of the aforementioned policies, practices,
customs, usages, and failures of defendant City of New York, and
its deliberate indifference to its duty to have such policies to
ensure that New York residents are not retaliated against, false-
ly arrested, maliciously prosecuted, and discriminated against

Plaintiff suffered the aforesaid injuries.

71. As a result of the aforementioned policies, etc., of defendant City of New York, Plaintiff sustained the aforementioned deprivations in violation of 42 U.S.C. § 1983.

72. Further, Det. Walcott, and Det. Nieves both individually, and collectively each have, or had federal civil rights lawsuits filed against them wherein it was alleged they <u>inter alia</u>, used excessive force, falsely arrested, and engaged in other deprivations of constitutional rights of African-Americans, Latinos, and other minority group members while working under color of law as members of the New York City Police Department.

73. Nevertheless, no internal Affairs Division investigations or evaluations or discipline of those officers was ever conducted regarding their actions to detect animus towards minorities. As a result the City of New York effectively ratified such misconduct by their officers.

74. As a direct and proximate result Plaintiff's rights were violated under the First, Fourteenth, and Eighth United States Constitution.

75. Plaintiff is also respectfully requesting that the Court

assist him in identifying any and all other civil rights vio-
lation not identified herein.

 WHEREFORE, Plaintiff is respectfully requesting the following
relief:

 a. award Compensatory damages against all defendant's in the
amount of $ 3,000,000.00 or as a jury may determine, but no less
than $  3,000,000.00;

 b. award Punitive damages against all defendant's in the amount
of $ 3,000,000.00 or as a jury may determine, but no less than
$ 3,000,000.00;

 c. award Nominal damages as a jury may determine;

 d. award Special damages against all defendant's in the amount
of $ 500,000.00 or as a jury may determine, but no less than
$ 500,000.00;

 e. award Attorney fees, Pursuant to 42 U.S.C. § 1988 (if counsel
files a notice of appearance);

 f. award an damages that the Court or the jury deems just, and
proper.

f. Such and further relief as the Court or Jury deems just and proper.


## DECLARATION UNDER PENALTY OF PERJURY

I Anthony Minor, state that I am the Plaintiff in above entitled action. I have read the verified complaint  and state it is true and correct to the best of my knowledge; except for the matters that I alleged to be on information and belief and even those matters I believe them to be true Pursuant to 28 U.S.C. § 1746. Executed on November 6th, 2016


_Anthony Minor_
Anthony Monor, Plaintiff
Pro Se


dated: Malone, New York
       November 6th, 2016

ANTHONY MINOR, DIN 16A1760

FRANKLIN CORRECTIONAL FACILITY, P.O. BOX 10

62 Bare Hill Rd.

Malone, New York 12953-0010



FRANKLIN
CORRECTIONAL FACILITY

neopost
11/08/2016
US POSTAGE $006.45⁰
ZIP 12953
041L11251101



RECEIVED
NOV 1 4 2016
PRO SE OFFICE



UNITED STATES
POSTAL SERVICE ®

NEOPOST ™

USPS TRACKING #

9488 8178 9820 3187 7576 22

TO: UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

ATTN: PRO SE Court Clerk

500 Pearl St.

New York, NY 10007



USMP3
SDNY

("LEGAL MAIL")

